OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Victoria E. Ullmann, from a judgment of the Ohio Court of Claims, finding in favor of defendant-appellee, Ohio Bureau of Job and Family Services, on appellant's action for age discrimination.
 {¶ 2} On May 22, 1988, the Ohio Bureau of Employment Services ("OBES," since merged into the Ohio Department of Job and Family Services), hired appellant as an unclassified Attorney 4. Appellant's duties included reviewing contracts, conducting pre-disciplinary hearings, and reviewing grants concerning the federal Job Training Partnership Act. In 1990, due to a "class modernization," appellant's position title changed to Attorney 3, but the job duties remained the same.
 {¶ 3} Appellant's supervisor was James Keith, then chief legal counsel with OBES. Prior to 1993, the Office of Legal Counsel was comprised of five employees, the chief legal counsel, two Attorney 3 positions, an executive secretary and an administrative assistant.
 {¶ 4} In 1992, OBES began a reorganization of its legal department. As a result of the reorganization, OBES eliminated both of the Attorney 3 positions and created a single Attorney 4 position. On January 22, 1993, appellant and her co-worker, Keith Henley, were terminated from their Attorney 3 positions. Appellant was 40 at the time of the termination. Kathy Ferguson, an individual in her 30s, was hired for the newly-created Attorney 4 position.
 {¶ 5} Appellant appealed her termination to the State Personnel Board of Review ("SPBR"), alleging that her position had actually been "classified," and that proper procedures had not been followed concerning her removal. Following a hearing, an administrative law judge with the SPBR determined that appellant should have been in the classified civil service, and that appellant had been overclassified as an Attorney 3, her proper classification actually being an Attorney 2. Based upon the recommendation of the administrative law judge, SPBR issued an order directing OBES to choose one of four available options under former Ohio Adm. Code 123:1-3-01(O) in the event an employee is overclassified. In response, OBES made the decision to abolish appellant's position as an Attorney 3. The SPBR subsequently issued an order that appellant be reinstated to her position as an Attorney 3 until the effective date of her abolishment, November 19, 1993.
 {¶ 6} On November 10, 1993, appellant filed an appeal challenging the abolishment of her position. On December 8, 1994, an administrative law judge issued a report finding that the agency's abolishment of appellant's position due to the reorganization of the legal department was proper, therefore recommending that the agency's decision be affirmed. Appellant filed objections to the report, but the SPBR subsequently affirmed appellant's job abolishment.
 {¶ 7} Appellant appealed to the Franklin County Court of Common Pleas from the order of the SPBR. The trial court issued a decision, finding that the abolishment of appellant's position was supported by reliable, probative and substantial evidence, and was in accordance with law. Appellant timely appealed, and, by decision filed on June 18, 1996, this court affirmed the judgment of the trial court.
 {¶ 8} On June 29, 2001, appellant filed a complaint in the Court of Claims against appellee, alleging age discrimination pursuant to the Age Discrimination in Employment Act, Section 621, Title 29, U.S. Code et seq. The matter came for trial beginning on June 17, 2002, and appellant represented herself during the bench trial. By decision filed December 17, 2002, the Court of Claims determined that appellant had failed to prove her claim of age discrimination by a preponderance of the evidence and, therefore, entered judgment in favor of appellee.
 {¶ 9} On appeal, appellant sets forth the following five assignments of error for review:
I. The Court of Claims erred in failing to use the proper standards under federal law to determine whether the plaintiff had proven her prima facie case of age discrimination under29 U.S.C. § 623.
II. The Court of Claims erred in failing to use the proper standards under federal law to determine whether the plaintiff had proven that the defendant's alleged business justification was pretext.
III. The Court of Claims erred in deciding that plaintiff failed to prove her case of age discrimination against the defendant.
IV. The Court of Claims erred in handling discovery issues in a biased manner.
V. The Court of Claims erred in failing to grant plaintiff a new trial.
 {¶ 10} Under her first assignment of error, appellant contends that the Court of Claims committed reversible error by adding an additional requirement for a plaintiff seeking to establish a prima facie case of age discrimination. Specifically, citing language from the court's decision, she contends the court required her to show, as part of her prima facie case, that "age was the motivating factor for the adverse employment action."
 {¶ 11} In Coryell v. Bank One Trust Co. N.A.,101 Ohio St.3d 175, 2004-Ohio-723, paragraph one of the syllabus, the Ohio Supreme Court recently addressed the appropriate elements necessary to establish a prima facie case of age discrimination,[1] holding in part:
Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4112.14(A) in an employment discharge action, a plaintiff-employee must demonstrate that he or she (1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age. * * *
 {¶ 12} The establishment by a plaintiff of a prima facie case "`gives rise to a reciprocal burden on the part of the employer "to articulate some legitimate, nondiscriminatory reason" for its action.'" Caldwell v. Ohio State Univ., Franklin App. No. 01AP-997, 2002-Ohio-2393, at ¶ 61, quoting Texas Dept. ofCommunity Affairs v. Burdine (1981), 450 U.S. 248, 253,101 S.Ct. 1089. If an employer carries its burden, "the plaintiff must then be afforded `an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination.'" Caldwell, supra, at ¶ 61.
 {¶ 13} In Detzel v. Brush Wellman, Inc. (2001),141 Ohio App.3d 474, 483, the court discussed a plaintiff's pretext burden, stating in part:
Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible. * * *
* * *
In establishing pretext, "[i]f the plaintiff shows that [the] employer's explanation is not credible, the trier of fact may, but does not have to, draw the inference of intentional discrimination without any further evidence of discrimination." * * * Pretext must be proven by a preponderance of the evidence. * * *
In Manzer v. Diamond Shamrock Chemicals Co. (C.A. 6, 1994),29 F.3d 1078, the Sixth Circuit stated that in order to prove pretext, a plaintiff must show that" 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; and 3) the reasons were insufficient to warrant a discharge." * * * When the first or third findings of pretext are demonstrated, a court is permitted to infer discrimination from the circumstances. * * *
(Citations omitted.)
 {¶ 14} In the present case, the Ohio Court of Claims cited a federal decision, Burzynski v. Cohen (C.A. 6, 2001),264 F.3d 611, 622, as stating the elements for a prima facie case. The elements set forth in Burzynski are the same as those listed inCoryell, supra, and appellant does not challenge the Court of Claims' citation to Burzynski. As noted, however, appellant argues that the court set forth an additional requirement to the prima facie case, i.e., that age was the motivating factor for the adverse action.
 {¶ 15} While we agree with appellant that the language at issue is not part of the plaintiff's initial burden of proving a prima facie case, appellant has failed to show reversible error. In its decision, the Court of Claims did not explicitly discuss whether appellant's proof satisfied the elements of a prima facie case, and it was not required to do so since the case was fully tried on the merits. See United States Postal Serv. Bd. ofGovernors v. Aikens (1983), 460 U.S. 711, 713-714,103 S.Ct. 1478 ("[b]ecause this case was fully tried on the merits, it is surprising to find the parties * * * still addressing the question whether [the plaintiff] made out a prima facie case"). Thus, in focusing on whether the prima facie case has been met, appellant has "unnecessarily evaded the ultimate question of discrimination vel non." Instead, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant," as the factfinder has before it "all the evidence it needs to decide whether `the defendant intentionally discriminated against the plaintiff.'" Id. at 715.
 {¶ 16} In the instant case, the Court of Claims found that OBES had shown a non-discriminatory reason for its action, and that appellant had failed to prove that reason was merely a pretext, or that the abolishment of appellant's position was motivated by age. These findings, discussed more fully, infra, squarely speak to the ultimate question of discrimination vel non. Aikens, supra, at 714. Accordingly, since both sides proffered evidence in this case, and because the Court of Claims had all the evidence it needed to decide whether appellee intentionally discriminated against appellant, it was not required to resolve whether the prima facie case was actually proven; nor is it necessary for this court to consider that issue on appeal. See Fallis v. Kerr-McGee Corp. (C.A. 10, 1991),944 F.2d 743, 744 (after a full trial on the merits, the issue of whether plaintiff has proven a prima facie case "drops out," and an appellate court is "left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against him on the basis of age"); Brocklehurst v. PPG Indus., Inc.
(C.A. 6, 1997), 123 F.3d 890, 897, fn. 5 ("[b]ecause this case has been fully tried on the merits [the reviewing court] may not question whether [plaintiff] established a prima facie case").
 {¶ 17} Based upon the foregoing, appellant's first assignment of error is without merit and is overruled.
 {¶ 18} Under the second assignment of error, appellant asserts that the Court of Claims relied upon an incorrect standard in analyzing the issue of pretext. Specifically, she argues that the only case cited by the Court of Claims, Manofskyv. Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 667, sets forth an outdated "standard." Appellant suggests that the court should have relied upon more recent standards, such as those stated in Reeves v. Sanderson Plumbing Products, Inc.
(2000), 530 U.S. 133, 120 S.Ct. 2097, and Dews v. A.B. Dick Co.
(C.A. 6, 2000), 231 F.3d 1016, 1021.
 {¶ 19} Upon review, we disagree with appellant's contention that the Court of Claims utilized an incorrect standard. Read in context, the court's decision does not suggest that it relied upon Manofsky for its "standard" regarding the issue of pretext. Rather, the court cited to Manofsky for the proposition that, if the employer articulates a legitimate, non-discriminatory reason for the adverse employment action, "the presumption of discrimination is rebutted," and "plaintiff must then present evidence that the employer's proffered reason was a mere pretext for unlawful discrimination." Although theManofsky case was decided in 1990, the proposition for which it was cited by the Court of Claims is still an accurate statement of the burden-shifting analysis under McDonnell Douglas Corp. v.Green (1973), 411 U.S. 792, 93 S.Ct. 1817. Further, the ultimate findings by the Court of Claims, concluding that the reason proffered by OBES for its actions was not pretextual, and that the abolishment of appellant's position was not motivated by age, indicate that the trier of fact addressed the primary issue it was required to consider, i.e., "which party's explanation of the employer's motivation it believes." Aikens, supra, at 716. This analysis is consistent with federal law, and we find no merit to appellant's argument that the Court of Claims applied an incorrect standard.
 {¶ 20} Appellant's second assignment of error is without merit and is overruled.
 {¶ 21} Under the third assignment of error, appellant asserts that the Court of Claims erred in finding that she failed to prove her claim of age discrimination. Appellant argues that her removal constituted a discharge, whereby she was "replaced" by Ferguson, and appellant maintains that she proved the business justifications offered by OBES were pretextual. In arguing that she presented proof of pretext, appellant contends that appellee's witness, Keith, made false allegations that: (1) the Operations Improvement Task Force approved her discharge; (2) the reorganization saved the agency money; and (3) that Ferguson was handling substantially different duties than appellant.
 {¶ 22} Although not stated as such in appellant's brief, appellant's arguments essentially challenge the trial court's findings as against the manifest weight of the evidence. It is well-settled that a reviewing court will not reverse a judgment of the trial court as being against the manifest weight of the evidence if such evidence is supported by some competent, credible evidence going to all the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. Furthermore, "a reviewing court must be guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses, observe their demeanor, gestures, voice inflections, and use these observations in weighing the credibility of the proffered testimony." Whiting v. Ohio Dept. of Mental Health
(2001), 141 Ohio App.3d 198, 202.
 {¶ 23} At trial, appellee presented testimony that appellant's position was eliminated as part of a reorganization of the legal department and, according to Keith, former chief legal counsel for OBES, the reason for the abolishment was "for reasons of efficiency in economy." (Tr. 292.) Prior to the events resulting in changes to the office of legal counsel, OBES had undergone other reorganizations during the early 1990s. Specifically, Keith testified that the first reorganization of the agency took place in the summer of 1991 in the "public service assistant operations" due to a loss of federal funding, and that some jobs were abolished as a result of "changes in the delivery of the federal program." (Tr. 275.)
 {¶ 24} Later that year, major reorganizations took place with "the operations division, the employment service division, and a job training partnership Ohio division." (Tr. 275.) Keith testified that, following these reorganizations, OBES administrator, James Conrad, discussed with him the organization of the Office of Legal Counsel, and "whether or not the office was structured the way that was necessary to carry out the functions * * * efficiently and effectively." (Tr. 278.)
 {¶ 25} Keith noted several changes in 1992, resulting in the Office of Legal Counsel giving up some of its previous responsibilities. For instance, in the area of unemployment compensation law, one of the functions of the legal department was to determine whether or not to grant reconsideration if an employer was not satisfied with a determination; that decision could then be appealed to the Unemployment Compensation Board of Review. However, in May of 1992, that function was removed from the Office of Legal Counsel. Keith stated that the Attorney General's office also played a role in the reorganization. Specifically, in October of 1992, the Attorney General's office was given the task of appearing before the Unemployment Compensation Board of Review, a matter previously handled by the Office of Legal Counsel.
 {¶ 26} During the reorganization process, Keith considered how the amount of work he was performing could be delegated to others so that the office could be run most efficiently. In Keith's view, "delegating the work was an important factor." (Tr. 283-284.) However, with the office no longer involved with representation before the Unemployment Compensation Board of Review or reconsideration decisions, Keith stated that there was only the need for "one other attorney in the office." (Tr. 284.) Further, he determined that the appropriate classification specification would be Attorney 4, because it was "a management level position and it encompasses the necessary qualifications." (Tr. 284.) The "key points" for Keith were for the other attorney "to be able to, and be responsible for, providing direct advice to the administrator," and also to act "with signature authority for the administrator and to act in my absence." (Tr. 285.) The responsibility for providing legal advice to the administrator was not within the classification of an Attorney 3, and Keith stated that, after consultation with the Department of Administrative Services, that agency confirmed that the appropriate classification for the new position was Attorney 4.
 {¶ 27} In asserting that the business justification proffered by OBES was pretextual, appellant maintains that Keith falsely alleged that the Operations Improvement Task Force required changes in the Office of Legal Counsel that resulted in the abolishment of appellant's position. Appellant points to her Exhibit No. 66, an "Operations Improvement Task Force Recommendation Reporting Form," dated July of 1991, containing a recommendation to OBES that it increase its effectiveness by unifying legal functions into a "single OBES Legal Section." Appellant maintains that, had the Office of Legal Counsel followed this report, the office would have been given more duties, and no "lay-off" would have taken place. Thus, appellant contends, any allegation that this report supported a "lay-off" is false.
 {¶ 28} Upon review, the record does not support appellant's contention that Keith testified that the task force report "required" the changes to the Office of Legal Counsel. As indicated above, Keith testified extensively regarding the basis of his decision for reorganizing the office, including his discussions with the administrator and the Department of Administrative Services. Keith was asked limited questions about the task force report, and, while he may have cited the report (which recommended several changes to the legal department) as a factor in the decision to reorganize, he did not represent that the abolishment of the Attorney 3 positions was mandated by that report. Further, appellant's claim of a misrepresentation by Keith is, in part, dependent upon her own interpretation of the potential effect upon the agency had it followed the report's recommendation. However, her view that the report necessitated an increased workload for the legal department is somewhat conjectural; as noted, there was little discussion of this document at trial, and the trial judge recognized, at the time of its admission, that the document merely contained a "recommendation." Accordingly, we find unpersuasive appellant's argument that Keith's testimony in relation to this exhibit proved that the conduct of OBES was pretextual.
 {¶ 29} Appellant next contends that Keith gave false testimony that the reorganization saved the agency money, and appellant further asserts that appellee's Exhibit O is intentionally misleading. That document, which lists personnel costs for the Office of Legal Counsel both before and after the reorganization, represents that the office "achieved a savings of $63,950 in total personnel costs over the twelve months after the reorganization." Appellant argues that the document does not take into consideration evidence that other members of the support staff received upgrades, resulting in increased costs. The competing evidence appellant apparently relies upon is her statement at trial that "[b]oth the younger secretaries got upgrades prior to the layoff, got increases in salary and position." (Tr. 131.) However, as noted by appellee, appellant's testimony was unsupported by any corroborative evidence as to whether (or when) an upgrade took place, whether it was mandated by OBES, and whether Keith had any role in such action. Further, the Court of Claims had no evidence of specific increased costs resulting from an upgrade. Moreover, appellant did not cross-examine Keith regarding his testimony as to cost savings following the reorganization, nor did appellant question Keith about the representations contained in appellee's Exhibit O. Based upon the record presented, the trier of fact was not required to find that appellant's unsupported statement refuted appellee's stated business justification for the reorganization.
 {¶ 30} We also find no merit to appellant's contention that there was no credible evidence that an Attorney 4 position was needed in order to fulfill the duties of the Office of Legal Counsel. As noted, Keith testified that, he wanted the new position to be responsible for providing direct advice to the administrator, a responsibility that an Attorney 3 did not have. In this regard, Keith testified that the administrator gave Ferguson direct assignments, whereas the evidence was undisputed that appellant never directly worked with the administrator. Further, Keith wanted the Attorney 4 to act in the absence of the chief legal counsel, and to act with signature authority for the administrator. Keith testified that other differences between the Attorney 4 and Attorney 3 positions included matters "dealing with legal advice * * * interpretation of federal laws, [and] more significantly reviewing agency policy development, grants and inner agency cooperative agreements to ensure compliance with those laws[.]" (Tr. 287.)
 {¶ 31} There was evidence presented that the Attorney 3 and Attorney 4 positions both conducted pre-disciplinary hearings, and the Attorney 3 would make a "just cause" determination; however, the Attorney 4 recommended the imposition of a penalty, a matter not entrusted to the Attorney 3. Further, the Attorney 3 reviewed contracts and grants for form only, while the Attorney 4 was responsible for conducting substantive review of contracts and grants. Keith testified that other responsibilities given to the Attorney 4, but not the Attorney 3, included conducting alternative dispute resolution training, as well as reasonable suspicion drug testing training for OBES employees. According to Keith, the Attorney 4 performed "less than 50%" of the same duties previously performed by Attorney 3s. (Tr. 358.)
 {¶ 32} Upon review, there was competent, credible evidence for the Court of Claims to reject appellant's contention that the duties performed by Ferguson were no different from the duties appellant previously performed as an Attorney 3.
 {¶ 33} The evidence also supports the Court of Claims' determination that OBES personnel responsible for hiring the Attorney 4 lacked confidence in appellant and felt she was not qualified for a management position. Appellant challenges testimony by appellee's witnesses, including John Gore, who stated that he had "no confidence" in asking appellant for legal advice. (Tr. 231.) Appellant maintains that these witnesses fabricated testimony in order to "spin" a business justification. However, "[t]he existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." Little v. Republic Refining Co.
(C.A. 5, 1991), 924 F.2d 93, 97. Thus, even assuming appellant was correct about her abilities, it does not necessarily follow that those employees of appellee responsible for evaluating appellant were not sincere in doubting her qualifications for a management-level position. An employer may make a subjective judgment regarding an employee for any reason that is not discriminatory, and this is "especially true when * * * a management level job is involved." Ackerman v. Diamond ShamrockCorp. (C.A. 6, 1982), 670 F.2d 66, 70.
 {¶ 34} Appellant also contends, as proof of pretext, that Keith committed perjury in testifying about the duties Ferguson performed as an Attorney 4. Specifically, appellant argues that Keith misrepresented that Ferguson decided issues of just cause and the imposition of discipline in pre-disciplinary actions; appellant maintains that the evidence shows Keith made the final decision as to both issues.
 {¶ 35} At trial, appellant testified that appellant's Exhibit No. 30, a pre-disciplinary report prepared following a hearing conducted by Ferguson, indicated that, while Ferguson made a finding of just cause, Keith signed the document under the heading of "predisciplinary chairperson." Appellant argued that the signature by Keith contradicted his claim that Ferguson recommended the penalty.
 {¶ 36} During Keith's testimony, counsel for appellee questioned Keith about his signature and recommendation on the document. Keith testified that, although he signed the document, Ferguson took part in the decision regarding the penalty during a meeting. Keith had earlier explained that there were "two parts" to the process of recommending the imposition of discipline. (Tr. 300.) Specifically, prior to the document being signed containing the recommendation, a meeting was conducted "where discussion was held as to what actions to take based upon the predisciplinary report if discipline was to be imposed, and if so, what level at that point." (Tr. 300.) According to Keith, Attorney 3s did not attend those meetings, but the Attorney 4 attended and made a recommendation as to the type of discipline to impose.
 {¶ 37} Counsel for appellee also questioned Keith about appellant's Exhibit No. 53, another pre-disciplinary report prepared by Ferguson. On that document, Ferguson, rather than Keith, signed under the heading "predisciplinary chairperson," and recommended the penalty (one-day suspension). When questioned as to why Ferguson's name was listed instead of his, Keith responded, "[n]ormally on those cases, the preference of the deputy administrator was that I would sign it, if I were there. My belief was that I wasn't present at that time, and so to keep the discipline moving forward, she went ahead and signed it." (Tr. 306.)
 {¶ 38} We note that appellant did not question Keith on cross-examination regarding his explanation that, despite instances where Ferguson did not sign as the pre-disciplinary chairperson, she nonetheless recommended the penalty to be imposed; nor did appellant question the witness regarding his testimony that the deputy administrator preferred that he, as chief legal counsel, actually sign the reports. Despite appellant's contention that Keith's testimony was false, the trier of fact was free to accept or reject Keith's explanation, and appellant's contention that she established pretext through perjured testimony is unpersuasive.
 {¶ 39} As to the ultimate issue before the trier of fact, the record supports the Court of Claims' finding that the employer produced persuasive evidence of a legitimate, non-discriminatory reason for its adverse employment action, and that appellant failed to prove that those reasons were false and nothing more than a pretext for age discrimination. Here, OBES articulated that it reorganized the Office of Legal Counsel for reasons of efficiency. A restructuring or reorganizing of operations is a legitimate, non-discriminatory reason for abolishing a position.McCloskey v. Union Carbide Corp. (D.Conn. 1993), 815 F. Supp. 78,81. The Court of Claims recognized the general principal that courts do not sit as a "super-personnel department that reexamines an entity's business decisions." Elrod v. Sears,Roebuck Co. (C.A. 11, 1991), 939 F.2d 1466, 1470. Further, appellant was required to do more than just cast doubt on her employer's justification for its action. Goldman v. First Natl.Bank of Boston (C.A. 1, 1993), 985 F.2d 1113, 1117. As discussed above, the trier of fact could have reasonably concluded that appellant failed to provide sufficient evidence, as proof of pretext, that the employer's explanation for the reorganization was not worthy of belief. Rather, there was competent, credible evidence to support the Court of Claims' finding that the decision by OBES to reorganize the legal department was based upon a desire to increase the efficiency of the office, and that such desire by the employer constituted a legitimate, non-discriminatory reason for eliminating the two Attorney 3 positions.
 {¶ 40} Based upon the foregoing, appellant's third assignment of error is without merit and is overruled.
 {¶ 41} Under the fourth assignment of error, appellant asserts that the Court of Claims erred by handling discovery matters in a biased manner. Appellant argues that, she requested to see certain documents, but that the court refused to compel the Attorney General's Office to produce such documents until after she filed a mandamus action with the Ohio Supreme Court. Appellant argues that, in contrast, the Court of Claims granted a motion to compel filed by appellee, ordering her to make copies of OBES documents that the agency had previously provided her.
 {¶ 42} The record indicates that, on November 5, 2001, appellant filed with the Court of Claims a motion to compel, which the court overruled by entry filed December 5, 2001. On April 5, 2002, appellant filed a motion to stay proceedings on the basis that she intended to file an action in the common pleas court, pursuant to R.C. Chapter 149, for a public records request. On May 3, 2002, appellant filed an "addendum motion for stay of proceeding," stating that she had determined "it is the wisest course of action to file her records act case in the Supreme Court of Ohio." The Court of Claims conducted status conferences on May 3, and May 6, 2002, and by entry filed on May 10, 2002, the parties entered stipulations as to various documents, and the court overruled appellant's motion for stay as moot.
 {¶ 43} In general, "a trial judge is presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome the presumption of integrity." Justice v. Nationwide Ins. Co. (May 27, 1999), Franklin App. No. 98AP-1083. Contrary to appellant's contention, the record in this case fails to show bias on the part of the Court of Claims toward appellant regarding the discovery process. Although the court may have denied her motion to compel, a "judge's rulings of law are legal issues subject to appeal, and are not by themselves evidence of bias or prejudice." Id. Further, in light of the fact the parties entered into stipulations regarding contested discovery documents, appellant has not shown she was prejudiced at trial because of a discovery ruling.
 {¶ 44} Accordingly, appellant's fourth assignment of error is without merit and is overruled.
 {¶ 45} Under the fifth assignment of error, appellant asserts that the Court of Claims erred in failing to grant a new trial. Appellant argues that it requested the court to reopen its decision to allow the parties to submit proposed findings of fact and conclusions of law. Appellant further argues that the court utilized outdated cases and improper standards in deciding the case.
 {¶ 46} In general, "[t]he denial by a trial court of a motion for a new trial is subject to reversal on appeal only upon demonstration that the trial court abused its discretion."Dillon v. Bundy (1991), 72 Ohio App.3d 767, 773.
 {¶ 47} To the extent appellant argues that the Court of Claims erred in using outdated cases and improper standards, we have previously addressed, and rejected those arguments under the first and second assignments of error. Regarding appellant's contention that the court erred in failing to "reopen" the decision and allow the parties to submit proposed findings of fact and conclusions of law, the record shows that appellant failed to request findings of fact and conclusions of law pursuant to Civ.R. 52. In instances where a party fails to make a request for findings of fact and conclusions of law under Civ.R. 52, "the reviewing court must presume that the trial court applied the law correctly and must affirm if there is some evidence to support the judgment." Ratliff v. Ohio Dept. ofRehab. Corr. (1999), 133 Ohio App.3d 304, 311-312. In the present case, as already discussed, there was competent, credible evidence to support the trial court's decision, and the Court of Claims did not abuse its discretion in failing to grant appellant's motion for a new trial.
 {¶ 48} Appellant's fifth assignment of error is without merit and is overruled.
 {¶ 49} Based upon the foregoing, appellant's five assignments of error are overruled, and the judgment of the Ohio Court of Claims is hereby affirmed.
Judgment affirmed.
LAZARUS, P.J., and BOWMAN, J., concur.
[1] The fourth element cited in Coryell, is taken from the United States Supreme Court's decision in O'Connor v. Consol.Coin Caterers Corp. (1996), 517 U.S. 308, 313, 116 S.Ct. 1307. That element differs from the fourth element set forth in Barkerv. Scovill, Inc. (1983), 6 Ohio St.3d 146, 148, in which the Ohio Supreme Court stated that a plaintiff must show "that he was replaced by, or his discharge permitted the retention of, a person who did not belong to the protected class." In Coryell,
supra, at ¶ 19, the Ohio Supreme Court replaced Barker's fourth prong with a requirement that the favored employee be "substantially younger than the protected employee," reasoning that "[a] `substantially younger' test serves R.C. 4112.14(A)'s purpose because it is logically connected to the discrimination that R.C. 4112.14(A) seeks to prevent."